Archie TINDELL, James
Wright, Petitioners

v.

DEPARTMENT OF CORRECTIONS,
John Wetzel, Secretary, Debra Savers,
Supt., Eric Tice, D.S.F.M., M. Over-
myer, D.S.C.S., Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 9, 2013.

Decided March 24, 2014.

Archie Tindell and James Wright, pro se.

Raymond W. Dorian, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: LEADBETTER, Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Archie Tindell and James Wright (Petitioners), *pro se*, have filed an amended petition for review in the nature of mandamus in our original jurisdiction naming as respondents the Department of Corrections (DOC), John Wetzel, Secretary of the DOC, and employees of the State Correctional Institution—Forest (SCI Forest) Superintendent Debra K. Sauers [1], Superintendent Daniel Burns [2], Deputy Superintendent Eric Tice, and Deputy Superintendent Michael Overmyer (collectively Respondents). Before the Court are Respondents' preliminary objections. Respondents object in the nature of a demurrer to Petitioners' amended petition for review, seeking dismissal pursuant to Pennsylvania Rule of Civil Procedure No. 1028(a)(4).[3] Respondents also seek dis-

---

1. Superintendent Debra K. Sauers name has been spelled as both "Sauers" and "Savers" in Petitioners' pleadings.

2. Although Superintendent Daniel Burns does not appear in the caption, he was added as a respondent in Petitioners' amended petition.

3. In reviewing preliminary objections in the nature of a demurrer, this Court has stated: "Preliminary objections in the nature of a demurrer are deemed to admit all well-pleaded material facts and any inferences reasonably deduced therefrom, but not the complaint's legal conclusions and averments. The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled. A demurrer should be sustained only in cases that are clear and free

missal of the SCI Forest employees as respondents, because they are not state-wide officers for purpose of this Court's original jurisdiction under Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a). Because we conclude that Petitioners have failed to state a claim upon which relief can be granted, Respondents preliminary objection in the nature of a demurrer is granted and Petitioners' amended petition for review in the nature of mandamus is dismissed.[4]

## I.

■■■■ A writ of mandamus is an extraordinary remedy used to compel official performance of a ministerial act when a petitioner establishes a clear legal right, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law. *Danysh v. Wetzel,* 49 A.3d 1, 2 (Pa.Cmwlth.2012). The purpose of mandamus is to enforce rights that have been clearly established. *Silo v. Commonwealth,* 886 A.2d 1193, 1195 (Pa.Cmwlth. 2005). Mandamus may not be used to establish legal rights or to compel performance of discretionary acts. *Maute v. Frank,* 670 A.2d 737, 740 (Pa.Cmwlth. 1996). Although Petitioners have titled their action as one in mandamus, they also

request permanent injunctive relief. (Amended Petition, Prayer for Relief.) Like mandamus, Petitioners' threshold burden when seeking a permanent injunction is to establish a clear legal right to relief. *Rosario v. Beard,* 920 A.2d 931, 934 (Pa.Cmwlth.2007). To secure injunctive relief, Petitioners must demonstrate that the right to relief is clear, that there is an urgent necessity to avoid an injury which cannot be compensated in damages, and that the greater injury will result from refusing rather than granting the relief requested. *Id.; Singleton v. Lavan,* 834 A.2d 672, 674 (Pa.Cmwlth.2003). Petitioners also request incidental damages pursuant to Section 8303 of the Judicial Code.[5] 42 Pa.C.S. § 8303.

## II.

Petitioners have been housed at SCI Forest in the Restricted Housing Unit (RHU). In stating their claim for a writ of mandamus, Petitioners allege that conditions in the RHU violate a series of DOC regulations and policies that govern operation of State Correctional Institutions within Pennsylvania.[6] (Amended Petition, ¶¶ 55–74.) To be clear, Petitioners do not allege that these policies and regulations violate their statutory or constitutional

from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded." *Lennitt v. Department of Corrections,* 964 A.2d 37, 40 (Pa.Cmwlth.2008)

4. Due to our resolution of this matter, we do not address Respondents' objection to this Court's jurisdiction over the SCI Forest employees.

5. Section 8303 of the Judicial Code provides: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal."

6. The sections of the Pennsylvania Code cited by Petitioners in their mandamus petition are applicable to County and not State Correctional Institutions; however, because the Pennsylvania Code does contain, in some instances, analogous provisions applicable to State Correctional Institutions, *compare, e.g.* 37 Pa.Code § 95.226 (Housing in County Jails) and 37 Pa.Code § 93.11 (Housing in State Correctional Institutions); (Amended Petition, ¶¶ 55, 62, 66, 72, 74.) and Petitioners have also identified administrative policies maintained by DOC that they allege Respondents have violated, we will address this portion of Petitioners' mandamus petition. (Amended Petition, ¶¶ 63, 65, 73.)

rights. *Compare, Bussinger v. Department of Corrections,* 29 A.3d 79, 93 (Pa. Cmwlth.2011). Instead, Petitioners allege that the policies and regulations adopted by DOC create rights and that Respondents' failure to adhere to DOC policies and regulations in operating the RHU at SCI Forest violates these clearly established rights.

▮ Allegations that corrections officers have failed to follow rules and regulations promulgated or adopted by prison officials that do not also allege this failure has violated a clearly established statutory or constitutional right of a prison inmate cannot state a claim for mandamus, because administrative rules and regulations "do not create rights in prison inmates." *Commonwealth ex rel. Buehl v. Price,* 705 A.2d 933, 936 (Pa.Cmwlth.1997); *Lawson v. Department of Corrections,* 114 Pa. Cmwlth. 573, 539 A.2d 69, 71–72 (1988). Administrative regulations are not statutes or constitutional provisions.[7] *Compare,* 61 Pa.C.S. § 5901 (establishing an inmate's statutory right to physical exercise).

▮▮ Petitioners' allegations that DOC policies are violated by the conditions that persist in the RHU do not state claims sounding in mandamus. Prison officials are afforded a wide range of discretion in the promulgation and enforcement of policies to govern internal prison operations and must be allowed to exercise their judgment and to execute those policies necessary to preserve order and maintain security within Pennsylvania's State Correctional Institutions free from judicial interference. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Bronson v. Central Office Review Committee,* 554 Pa. 317, 320, 721 A.2d 357, 358 (1998); *Jackson v. Hendrick,* 509 Pa. 456, 465, 503 A.2d 400, 404 (1986); *Garrison v. Department of Corrections,* 16 A.3d 560, 564 (Pa.Cmwlth.2011); *Maute,* 670 A.2d at 739. The petition in the nature of mandamus filed by Petitioners asks this Court to invade the discretion afforded Respondents and to direct Respondents to exercise their discretion in a particular manner. Even if this Court were to agree with Petitioners that Respondents have exercised their discretion incorrectly, a writ of mandamus cannot be issued to compel Respondents to exercise their discretion in a particular way, but only to perform a ministerial act. *Clark v. Beard,* 918 A.2d 155, 160–161 (Pa.Cmwlth.2007).

### III.

▮ In addition to Petitioners' allegations that DOC policies are not adhered to within the RHU, Petitioners claim that they have been denied their right to be free from the infliction of cruel and unusual punishment guaranteed under the

---

7. For example, Section 5903 of the Prisons and Parole Act, Act of August 11, 2009, P.L. 147, No. 33, § 7, states: "While incarcerated, an inmate of a State correctional institution shall wear identifiable prison uniforms and shall not wear civilian clothing." 61 Pa.C.S. § 5903. Section 5903 of the Prison and Parole Act establishes that prison inmates must wear an identifiable prison uniform, but the Prison and Parole Act does not establish what that uniform shall be. In contrast, DOC DC–ADM 815 addresses in great detail the type of identifiable prison uniform an inmate will be issued depending on where the inmate is housed, such as the "royal blue hobby jeans and a royal blue, short sleeve shirt with DOC printed in large black block letters on the back," issued to inmates housed in the Special Observation Unit. DOC DC–ADM 815 § 1(B)(11). DOC DC–ADM 815 is an administrative policy, reflecting an exercise of prison officials' discretion to determine what identifiable prison uniform should be issued based on classifications of inmates, but it does not give inmates housed in the Special Observation Unit a right to wear the particular clothing described.

Eighth and Fourteenth Amendments to the United States Constitution.[8] (Amended Petition, ¶ 75.) Although prison officials are afforded wide latitude in the administration of correctional institutions, prisoners do not lose all constitutional rights as a result of imprisonment. *Madden v. Jeffes*, 85 Pa.Cmwlth. 414, 482 A.2d 1162, 1165 (1984). A prisoner's constitutional rights must, however, be weighed against the government's concern with the maintenance of order, discipline and security within correctional institutions. *Id.* at 1166. Petitioners' claim that their Eighth Amendment right to be free from cruel and unusual punishment has been violated is premised on allegations that Respondents have shown a deliberate indifference to Petitioners' serious medical needs and that the conditions of the RHU deny Petitioners basic human necessities. (Amended Petition, ¶ 75.) In alleging that their constitutional rights have been violated Petitioners delineate six different categories in their petition: (a) ventilation; (b) sleep deprivation; (c) mental health; (d) behavior modification; (e) food service; and (f) clothing.

Petitioners allege that the RHU is extremely cold, that the ventilation system forces air into their cells with excessive pressure, and that the system allows fecal dust from feces smeared into the vents by mentally ill inmates to enter their cells.

(Amended Petition, ¶¶ 8–11, 17.) Petitioners allege that as a result they have suffered respiratory infections, headaches, upset stomachs, loss of appetite, and hypersensitivity pneumonitis, and that the exposure to human waste has long-term consequences for their health. (Amended Petition, ¶¶ 12, 14–16.) Petitioners further allege that the Respondents have knowledge of the deficient ventilation system from reports, DC–121 forms, rounds, cell reassignments made following their complaints, and grievances, and have failed to remedy the problem despite this knowledge. (Amended Petition, ¶ 13.)

Petitioners allege that the excessive air pressure from the ventilation system creates loud noises that prevent them from sleeping. (Amended Petition, ¶ 18.) Petitioners allege that the lack of uninterrupted sleep for eight hours can increase the risk of heart attacks and diabetes. (*Id.*) Petitioners allege that this deprivation of sleep has long term consequences for their health, particularly the health of Petitioner Tindell because he has been diagnosed with Type–1 Diabetes. (Amended Petition, ¶¶ 18–19.) Petitioners also allege that the medical department at SCI Forest refused to provide Petitioner Tindell with medical treatment for his Type–1 Diabetes. (Amended Petition, ¶ 18, Prayer for Relief.)

8. Petitioners allege that they have also been denied their right to be free of cruel and unusual punishment under Article 1, Section 13 of the Pennsylvania Constitution. Because the guarantee against cruel and unusual punishment in Article I, Section 13 of the Pennsylvania Constitution provides no greater protection than that afforded by the United States Constitution, our analysis of Petitioners' Eighth Amendment claim will determine the sufficiency of their claim under the Pennsylvania Constitution as well. *Commonwealth v. Baker*, —— Pa. ——, 78 A.3d 1044 (2013); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 73, 454 A.2d 937, 967 (1982) ("It is requested, however, that this Court interpret Art. I, § 13 as providing broader protection than that guaranteed by the 'cruel and unusual punishment' clause of the United States Constitution. We decline the invitation, and hold that the rights secured by the Pennsylvania prohibition against 'cruel punishments' are co-extensive with those secured by the Eighth and Fourteenth Amendments."), *abrogated on other grounds by Commonwealth v. Freeman*, 573 Pa. 532, 560, 827 A.2d 385, 402 (2003) (abrogating relaxed waiver on direct capital appeals); *Jochen v. Horn*, 727 A.2d 645, 649 (Pa.Cmwlth.1999).

Petitioners allege that confinement in the RHU necessarily includes significant social isolation and reduced environmental stimulation. (Amended Petition, ¶ 21.) Petitioners allege that social isolation and reduced environmental stimulation has been shown by a growing body of social science and clinical literature to lead to mental illness and to exacerbate the symptoms present in individuals who have already been diagnosed with a mental illness. (Amended Petition, ¶¶ 22–27.) Petitioners also allege that the isolation and resulting instability accompanying confinement in the RHU impairs an inmate's capacity to successfully adapt upon return to the broader prison environment. (Amended Petition, ¶ 27.)

▮▮▮▮ Petitioners allege that the staff of the RHU use racism, ethnic intimidation, racial profiling, official oppression, and retaliatory cover-ups as a part of an overall behavior modification regime intended to alter Petitioners' behavior.[9] (Amended Petition, ¶ 28.) Petitioners allege that punitive sanctions, including restrictions on access to the yard, the shower, movement, jumpsuits, and linens are used in retaliation and to cause anxiety. (Amended Complaint, ¶ 39.) Petitioners allege that the aim of the behavior modification techniques employed is not to provide emotional insight or to address any underlying psychological issues, but to alter negative behavior patterns through a regime of reward and punishment and to make them feel inferior to and dependent upon the RHU staff. (Amended Petition, ¶¶ 29–32, 35–38.) Petitioners allege that these behavior modification techniques are being misused, amounting to psychological warfare, and that this produces hypersensitivity to ordinary stimuli, obsessive thoughts, lack of impulse control, paranoia, and psychosis, which in turn leads to more sanctions. (Amended Petition, ¶¶ 34, 39–42.) Petitioners further allege that these techniques have caused their mental health to deteriorate and that these techniques abrogate the fundamental moral division between socially deviant behavior, which may be punished, and behavior based on illness, which is not the product of intent and should be addressed with medical treatment. (Amended Petition, ¶ 43.)

Petitioners allege that the food service management is deficient because the food served in the RHU is from the alternative and not the master menu, the food lacks nutritional value, the food is cold, the food consists of mostly chicken and hamburgers or fillers, and the food is cooked and served after it should have been discarded. (Amended Petition, ¶¶ 44–50.)

Petitioners allege that they have not been given adequate clothing, linens, and footwear. (Amended Petition, ¶ 51.) Petitioners allege that their linens are unserviceable and that their jumpsuits are ripped or torn. (Id.) Petitioners allege that the footwear issued to them has been

---

9. In addition to their Eighth Amendment claims, Petitioners state that their rights under the First Amendment to the United States Constitution have been violated by Respondents' use of behavior modification techniques. (Amended Petition, ¶¶ 43, 75.) Petitioners have not pled facts to support this claim. To state a claim for First Amendment retaliation, a petitioner must allege that: (1) the conduct that led to the retaliation was constitutionally protected; (2) the petitioner suffered some "adverse action" at the hands of the prison officials; and (3) there is a causal link between the two. See, e.g. Wilson v. Marrow, 917 A.2d 357, 364 (Pa.Cmwlth. 2007). Petitioners have used the word "retaliation," but Petitioners have failed to state any conduct they attempted to engage in that is protected by the First Amendment or a causal connection between that conduct and the alleged adverse action. Therefore, we sustain Respondents' demurrer as to any First Amendment claims asserted by Petitioners.

continually reused in the RHU and, as a result, has led to repeated outbreaks of foot fungus for which medical cream has been required. (Amended Petition, ¶¶ 52–53.) Petitioners also allege that they have been issued only one pair of underwear and that this has created a risk of crabs, scabies, body lice, and staph infections. (Amended Petition, ¶ 54.)

## IV.

■■■ We must reiterate that Petitioners' petition is in the nature of mandamus. Petitioners repeatedly state in their brief in opposition to Respondents' preliminary objections that they are seeking mandamus relief and that they do not intend their petition to be a civil rights action under 42 U.S.C. § 1983.[10] In arguing that their demurrer should be sustained, Respondents contend that Petitioners have not stated a clear legal right to relief and that Petitioners have an adequate and appropriate remedy available in the form of a civil action under 42 U.S.C. § 1983.[11]

■■■ The United States Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291 (internal citations omitted). The Court clarified that claims of negligent diagnosis or treatment, disagreement as to the course of treatment, and medical malpractice do not rise to the level of a constitutional violation merely because the patient is a prisoner. *Id.* at 106, 97 S.Ct. at 292. Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

■■■ Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry. *Id.* at 106–107, 97 S.Ct. at 292; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Common factors relied upon by the courts to determine if a medical need is sufficiently serious to fall within the ambit of the Eighth Amendment include whether the medical need is: (i) one that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary

---

10. Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

11. Respondents also argue that a writ of habeas corpus based on unconstitutional conditions of confinement is an adequate and appropriate remedy available to Petitioners. This argument has previously been asserted before this Court in support of preliminary objections filed against mandamus claims brought by prison inmates and rejected: habeas corpus is not available until all other remedies, including mandamus, have been exhausted. *Commonwealth ex rel. Lindsley v. Robinson*, 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977); *see also Moore v. Roth*, 231 Pa.Super. 464, 331 A.2d 509 (1974).

and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that causes chronic and substantial pain. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987).

▪▪▪ The medical need alleged does not need to be current to satisfy the sufficiently serious standard, but may result from a condition of confinement that is sure to or very likely to pose an unreasonable risk of serious damage to future health. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993) (Eighth Amendment claim could be premised upon future harm to health from exposure to environmental tobacco smoke). To establish a sufficiently serious medical need where the claim is based upon harm to future health, an inmate must allege both that the inmate has been exposed to an unreasonable risk of serious damage to future health and that it would violate contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.* at 36, 113 S.Ct. at 2482.

▪▪▪ In addition to satisfying the objective component of an Eighth Amendment claim, a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated. In *Farmer v. Brennan*, the Supreme Court concluded that the inquiry into whether a prison official was deliberately indifferent is a subjective one, requiring the demonstration of a state of mind akin to criminal recklessness, and held that a prisoner must establish that: (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference.[12] 511 U.S. at 837, 840, 114 S.Ct. at 1979, 1980. The Court also emphasized that the duty of a prison official under the Eighth Amendment is to ensure reasonable safety and that prison officials who respond reasonably to the

---

**12.** Although Eighth Amendment claims are overwhelmingly brought as civil rights action under Section 1983, for purposes of a mandamus action pursuant to Pennsylvania law it is important that the subjective intent requirement necessary to state a cognizable claim for violation of the Eighth Amendment ban on cruel and unusual punishment does not stem from Section 1983. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Rather, the Supreme Court's holding that the deliberate indifference standard requires an inquiry into the subjective state of mind of the alleged actor is rooted in the text of the Eighth Amendment. In *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), a case addressing claims that prison conditions constituted cruel and unusual punishment, the Court stated:

> The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.

*Id.* at 300, 111 S.Ct. at 2325 (emphasis in original); *accord Farmer v. Brennan*, 511 U.S. at 837, 114 S.Ct. at 1979 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). In a mandamus action that alleges a violation of an inmate's right to be free from cruel and unusual punishment that names DOC as a respondent, the subjective intent requirement of an Eighth Amendment claim presents considerable conceptual difficulties that have not previously been addressed by this Court. However, because the issue is not determinative here, we decline to address it.

alleged risk cannot be found liable under the Eighth Amendment, even where the measures taken by prison officials failed to abate the substantial risk. *Id.* at 844–845, 114 S.Ct. at 1982–1983. Examples of circumstances where a prison official has been found to act with deliberate indifference include where the prison official: (i) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (ii) delays necessary medical treatment based on a non-medical reason; (iii) prevents a prisoner from receiving needed or recommended medical treatment; or (iv) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury. *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999); *Monmouth County,* 834 F.2d at 346–347.

■ The question before this Court is whether Petitioners have pled facts that, if proven, would satisfy the elements necessary to state a cognizable claim for violation of the ban on cruel and unusual punishment due to denial of medical care, thus establishing the clear legal right necessary to state a claim for mandamus. Petitioners have failed to do so. In their petition, Petitioners name a number of respondents, but they fail to allege acts taken or omitted by the named Respondents that have caused the constitutional deprivation they seek to remedy. Much of the petition filed by Petitioners speaks in general terms, such as describing the deleterious effects that a growing body of scholarship has linked to solitary confinement, yet fails to identify harm suffered by, or individual to, Petitioners.

■ Petitioners state that isolation and reduced environmental stimulation has been shown to lead to mental illness, but do not identify symptoms or effects of a deteriorating mental state that they have experienced or aver that they have been denied access to mental health care. While a serious medical need can be demonstrated by alleging an unreasonable risk of serious damage to future health, such an allegation only satisfies the objective element of an Eighth Amendment claim; Petitioners still must allege facts that demonstrate a prison official acted with deliberate indifference to the unreasonable risk of serious damage to future health. Petitioners do not allege any facts in support of the deliberate indifference or subjective element necessary to state a claim for violation of the ban on cruel and unusual punishment based upon an unreasonable risk of serious damage to their future mental health.

■ Petitioners' allegation that Petitioner Tindell has been diagnosed with Type–1 Diabetes is sufficient to establish a serious medical need. However, Petitioners have failed to state the elements necessary to establish deliberate indifference to this serious medical need. In the body of Petitioners' petition, Petitioners reference Petitioner Tindell's Type–1 Diabetes in relation to a higher risk that diabetes patients face from interrupted sleep. In their prayer for relief, Petitioners request that this Court order the medical department at SCI Forest to treat Petitioner Tindell's Type–1 Diabetes with insulin. What is missing from Petitioners' claim is any allegation of fact to demonstrate deliberate indifference to Petitioner Tindell's serious medical need, such as a person or persons who know of Petitioner Tindell's diagnosis, intentionally prevent Petitioner Tindell from receiving the recommended treatment, and do so with the knowledge that without treatment Petitioner Tindell is exposed to a substantial risk of serious harm. This is also true for the allegations that interrupted sleep poses long-term consequences for Petitioner Tindell's physical health because of his Type–1 Diabetes. Even if Petitioners' allegation that a lack

of eight hours of uninterrupted sleep was sufficient to establish an unreasonable risk of serious damage to future health, Petitioners have not alleged facts that, if proven, would satisfy the intent requirement of the deliberate indifference standard.

Petitioners have stated concerns about their physical health as a result of the ventilation system in the RHU, but here the facts Petitioners have alleged negate any claim of deliberate indifference. While Petitioners have listed various ailments that they have endured and attribute to the ventilation system, Petitioners do not allege that they have been denied medical treatment for these ailments. Instead, Petitioners aver that the medical department at SCI Forest has provided treatment, and that staff within the RHU have repeatedly relocated Petitioner Tindell in an attempt to remedy the health issues Petitioners attribute to the ventilation system.

While we do not foreclose the possibility that a petitioner may be able to bring an action in mandamus asserting a claim for violation of the ban on cruel and unusual punishment due to the denial of medical care, based on the facts alleged here Petitioners have failed to establish a clear right to relief and, therefore, cannot proceed in mandamus.

## V.

Separate and apart from their Eighth Amendment claim for denial of medical care, Petitioners also seek mandamus relief for cruel and unusual punishment inflicted upon them as a result of the conditions of confinement within the RHU. Although correctional institutions are by their very nature restrictive and even harsh, the Eighth Amendment requires that the conditions of confinement do not include "unnecessary and wanton" inflictions of pain that are "totally without pe-

nological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The United States Supreme Court has made clear that the Constitution does not mandate comfortable prisons, but "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. at 833, 114 S.Ct. at 1977; *see also DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005–1006, 103 L.Ed.2d 249 (1989) ("When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."). Prison officials must ensure that inmates are not deprived of the "minimal civilized measure of life's necessities," including food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. at 346, 101 S.Ct. at 2399; *see also Farmer v. Brennan*, 511 U.S. at 833, 114 S.Ct. at 1976; *Hutto v. Finney*, 437 U.S. 678, 686, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978).

As with an Eighth Amendment claim based on deliberate indifference to a serious medical need, in order to establish that prison conditions violate the Eighth Amendment a prisoner must establish that prison officials were deliberately indifferent to conditions of confinement that constitute cruel and unusual punishment. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). In demonstrating that conditions of confinement are cruel and unusual, a prisoner

may establish that some conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example a low cell temperature at night combined with a failure to issue blankets." *Id.* at 305, 111 S.Ct. at 2327; *see also Hutto v. Finney,* 437 U.S. 678, 688, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1978) (remedial order supported by "the interdependence of the conditions producing the violation" of the Eighth Amendment ban on cruel and unusual punishment). However, the Court has cautioned that not "all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise·to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. at 303, 111 S.Ct. at 2326. Moreover, the use of restricted housing units or isolation cells alone has not been held to constitute a violation of the Eighth Amendment ban on cruel and unusual punishment. *Hutto v. Finney,* 437 U.S. at 685, 687, 98 S.Ct. at 2571; *Rivera v. Pennsylvania Department of Corrections,* 837 A.2d 525 (Pa.Super.2003) (holding conditions of confinement in long term segregation unit at SCI Pittsburgh did not constitute cruel and unusual punishment).

■■■■ The Pennsylvania Supreme Court has stated that "[j]ust what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition." *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 95, 280 A.2d 110, 116 (1971). The Eighth Amendment seeks to secure the dignity of human beings and it is clear that the evolving standards of decency from which the words "cruel and unusual" draw their meaning mandate that Petitioners' confinement does not deprive them of the minimal necessities of life. However, Petitioners do not allege that they have been denied warmth, sleep, physical and mental health care, food, or clothing. Instead, Petitioners allege that the temperature and ventilation, medical care, sanitation, noise levels, food, amount of sleep, and clothing are inadequate in the RHU. Petitioners' allegations amount to a claim that the standard of decency required by society has evolved to necessitate better conditions than those in which they are currently confined. Whether or not that is true, an Eighth Amendment claim based on the adequacy of the life necessities provided, rather than whether or not inmates are being deprived of those baseline necessities cannot be stated in a mandamus action; a mandamus action can compel prison officials to clothe inmates within their care, but it cannot be used to determine the quality of clothing necessary under society's standards and to order that only clothing of that quality be used to clothe inmates.

■■■■ Whether or not the adequacy of the conditions of confinement violates our society's evolving standards of decency is a searching inquiry that requires a balancing of the government's power to punish and legitimate interest in the orderly operation of correctional institutions with Petitioners' right to have their confinement be humane and free from the unnecessary and wanton infliction of pain. Such an inquiry, by its very nature, requires a careful balancing of the needs and duties of the state with the rights of the individual, requires an investigation into what within this balance is a reasonable act, and requires, above all, an examination of what is and is not a permissible exercise of discretion on the part of Respondents. A mandamus action cannot be used to evaluate prison officials' exercise of discretion or to compel prison officials to exercise their discretion in a particular way. In a

mandamus action, the relief sought can only be the performance of a ministerial act; it cannot be equitable. Equitable relief is exactly the type of relief an Eighth Amendment claim challenging the conditions of confinement or adequacy of the minimal necessities of life provided in a state correctional institution seeks. In alleging that the conditions of confinement in the RHU at SCI Forest are cruel and unusual as proscribed by the Constitutions of the United States and the Commonwealth of Pennsylvania, Petitioners are not asking this Court to enforce clearly established rights, to which Respondents have a corresponding duty, by ordering the performance of a mandatory or ministerial act. Petitioners are instead asking this Court to establish what their rights are and to fashion relief accordingly. Therefore, Petitioners have not stated a claim for mandamus.[13]

## VI.

For the foregoing reasons, Respondents' preliminary objections are granted and Pe-

titioners' petition for review in the nature of mandamus is dismissed.

## *ORDER*

AND NOW this 24th day of March, 2014, the preliminary objection in the above-captioned matter of the Department of Corrections, John Wetzel, Secretary of the Department of Corrections, Superintendent Debra K. Savers, Superintendent Daniel Burns, Deputy Superintendent Eric Tice, and Deputy Superintendent Michael Overmyer for failure to state a claim upon which relief can be granted is SUSTAINED and the petition for review in the nature of mandamus is DISMISSED.

13. Even if Petitioners could state a claim for mandamus based on the adequacy of the conditions of their confinement in the RHU, Petitioners' claim would fail here because, as with their claim based on denial of medical care, Petitioners have not alleged facts to demonstrate deliberate indifference on the part of prison officials. Throughout their en- tire petition, the closest Petitioners come to alleging deliberate indifference is in their discussion of behavior modification techniques. However, even here, Petitioners fail to identify a Respondent who has acted or failed to act with the knowledge that doing so created a serious risk of harm to Petitioners.