## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Wayne Brooks,           :
                  Appellant    :
                            :
           v.              :    No. 928 C.D. 2022
                            :    Submitted: May 19, 2023
Patricia Kelly, Supt. Thomas    :
McGinley, Sgt. Black, C.O. Symon,  :
V. Mirarchi, Lynette Rich and    :
Keri Moore                  :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                 **HONORABLE LORI A. DUMAS,** Judge

**<u>OPINION NOT REPORTED</u>**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: April 19, 2024**

George Wayne Brooks (Brooks), pro se, appeals an order of the Court of Common Pleas of Northumberland County (trial court) dismissing his Complaint[1] against Pennsylvania Department of Corrections (DOC) appellees Superintendent's Assistant and Grievance Coordinator Patricia Kelly (Kelly), Superintendent Thomas McGinley (McGinley), Sergeant Black (Sgt. Black), Corrections Officer Symon (C.O. Symon), Major of the Guards and Grievance Officer V. Mirarchi (Mirarchi), Health Care Administrator Lynette Rich (Rich), and Chief Grievance Coordinator Keri Moore (Moore) (collectively, DOC Appellees) asserting constitutional violations and violations of DOC's COVID-19 safety protocols. The trial court

---

[1] Brooks's initial filing with the trial court is untitled, but we refer to it as the Complaint for ease of discussion.

dismissed the Complaint as frivolous pursuant to Pennsylvania Rule of Civil Procedure 240(j)(1), Pa.R.Civ.P. 240(j)(1). After review, we vacate and remand for further proceedings.

## I.     THE COMPLAINT

Brooks filed a praecipe to proceed in forma pauperis and the Complaint with the trial court, averring as follows. Brooks is incarcerated at the State Correctional Institution at Coal Township. Brooks expressed concerns over Sgt. Black being unvaccinated and refusing to wear a mask that covered his nose and mouth as mandated by DOC's COVID-19 protocols. (Complaint (Compl.) ¶ 9.) Sgt. Black was coughing in Brooks's unit while handling paperwork and passing food trays. (*Id.*) On or about November 8, 2021,[2] Sgt. Black was removed from Brooks's unit because Sgt. Black tested positive for COVID-19. (*Id.* ¶ 10.) Brooks avers that as a direct result of Sgt. Black's actions, Brooks, who has preexisting chronic health issues, contracted COVID-19. (*Id.* ¶ 9.)

Brooks filed a grievance, which was reviewed by Mirarchi who found Brooks's complaints to be frivolous because prison officials are expected to follow DOC's COVID-19 safety protocols, including wearing masks when indoors and when in close proximity to others. (*Id.* ¶ 12.) Mirarchi also indicated the security video footage that Brooks requested in his first grievance was unable to be recovered, but noted Sgt. Black was not present in the prison on November 6 or November 7, 2021, and was relieved on November 8, 2021, prior to the distribution of the evening meal. (*Id.*) Brooks appealed Mirarchi's decision, and McGinley upheld in part, and denied it in part, finding Brooks's video retention claim had

---

[2] Many dates and names of DOC Appellees in the Complaint contain errors or typos, which we have edited by using surrounding context.

merit, but that prison officials are expected to follow DOC's COVID-19 safety protocols. (*Id.* ¶ 14.) Brooks appealed McGinley's determination, which Moore upheld finding that prison officials are supposed to wear masks when in close proximity to others in accordance with DOC's COVID-19 safety protocols. (*Id.* ¶ 16.)

Brooks filed a second grievance complaining that even after Sgt. Black was dismissed for testing positive for COVID-19, C.O. Symon did not wear a mask that covered his nose and mouth. (*Id.* ¶ 17.) C.O. Symon tested positive for COVID-19 on November 18, 2021, and was sent home. (*Id.*) Brooks then began to "feel tired[ and] it was hard for him to breathe[,]" and he is "an elder with preexisting medical conditions." (*Id.*) Before it was known that Brooks had contracted COVID-19, Brooks "was [] moved from [his unit] and placed in a hard cell in the prison infirmary in[]stead of being placed in the special unit . . . used for prisoners who had contracted the COVID-19 virus." (*Id.*) Brooks avers this housing placement was in retaliation for filing a grievance against Sgt. Black and C.O. Symon. (*Id.*) The hard cell had "no privacy[,]" the "cell light stayed o[]n all day, there were two cameras in the cell that watched [his] every move[,]" "[t]hey saw [him] every time [he] used the toilet[,]" and he "was never allowed to clean the cell the whole time [he] was there and no one clea[n]ed the cell." (*Id.*) Brooks stated that placing him in the hard cell "is not the way a person who ha[s] contracted COVID-19 is suppose[d] to be treated when prison and medical staff [are] concerned about his health." (*Id.*) Brooks again requested that video footage be reviewed and maintained from November 15, 2021, to November 18, 2021. (*Id.* ¶ 18.)

Mirarchi denied Brooks's second grievance stating his claims were frivolous and that, again, it is the expectation that prison officials wear masks in compliance

with DOC's COVID-19 safety protocols. (*Id*.) Mirarchi also stated that video footage was maintained as requested, but that C.O. Symon was not in the prison on November 15 or 16, 2021, and was "relieved from his post" on November 18, 2021. (*Id*.) Brooks appealed, and McGinley upheld in part and denied in part, "conced[ing]" that security video footage showed C.O. Symon was not wearing his mask at all times as required by DOC's COVID-19 safety protocols. (*Id*. ¶ 21.) McGinley stated that he and other prison officials "will continue to impress upon [] staff the importance of mask wearing as a necessary measure to mitigate this virus, and if need be, pursue administrative action against those who violate such." (*Id*.) McGinley ultimately denied Brooks's requested relief because DOC had its COVID-19 safety protocols in place and there was no validity to Brooks's claim that any one prison official caused Brooks to contract COVID-19. (*Id*. ¶ 22.) Brooks appealed, stating that the assertion that prison officials are following DOC's safety protocols "is contrary to the facts in this case." (*Id*. ¶ 25.) Moore upheld McGinley's decision because "[t]here was nothing new to add[.]" (*Id*. ¶ 26.)

Brooks asserts that "consistently reminding prison staff of the importance of adhering to the standard of mask wearing did noth[]ing to protect [him] from being infected with COVID[-19.]" (*Id*. ¶ 27.) Further, "Sgt. Black and [C.O. Symon] are lia[]ble because they are unvaccinated and willfully were not adhering to the mask wearing protocol[, and] McGinley and Mirarchi are liable for only remi[n]ding them to follow the protocol and expecting that they would do so." (*Id*.)

Thereafter, Brooks filed a third grievance complaining that prison officials were acting like "closet racist[s]" in denying his first and second grievances. (*Id*. ¶ 28.) Brooks asserts that Kelly precluded the third grievance from being processed because it was not presented in a "courteous manner" and violated DOC's policies.

(*Id.*) Brooks appealed Kelly's denial, and McGinley upheld Kelly's determination as Brooks's grievance contained "racially insensitive statements." (*Id.* ¶ 30.) Brooks appealed McGinley's determination, and Moore upheld the determinations of Kelly and McGinley. (*Id.* ¶ 32.)

In his Complaint, Brooks seeks declaratory and injunctive relief, and compensatory and punitive damages. Brooks asks the trial court to declare that prison officials put Brooks's life in imminent danger of being infected with COVID-19, were indifferent to COVID-19 safety protocols, spoiled his evidence and obstructed justice by not preserving security footage, retaliated against Brooks for filing grievances by housing him in a suicidal hard cell before it was known that he was infected with COVID-19, and violated his First and Fourteenth Amendment, U.S. CONST. amends. I, XIV, rights by denying a grievance for racism. (*Id.*, Requested Relief ¶¶ A.1.-A.5.) Brooks also asks the trial court to issue an injunction ordering prison officials to wear face masks to prevent the spread of COVID-19, maintain video footage when requested, and not to place him in a hard cell for filing grievances. (*Id.* ¶¶ B.1.-B.3.)

## II.  TRIAL COURT DECISION

The trial court denied Brooks's application to proceed in forma pauperis and dismissed the Complaint "as without merit," stating it could not "examine and substitute its judg[]ment relating to COVID-19 safety protocols[;]" "[r]egulations imposed by prison administration are entitled to judicial deference[;] and courts do not micromanage prison policy." (May 17, 2022 Order.) Brooks appealed, and in his Concise Statement of Errors pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b) (1925(b) Statement), Brooks contended the

5

trial court abused its discretion and erred in concluding the Complaint was frivolous because prison officials were not following COVID-19 protocols and were "deliberately indifferent" to Brooks's health and safety in violation of the Eighth, U.S. CONST. amend. VIII, and Fourteenth Amendments and article I, section 5 of the Pennsylvania Constitution, PA. CONST. art. I, § 5. (1925(b) Statement ¶ 10a.) In its Statement in Lieu of Opinion (Opinion), the trial court explained "[t]he gravamen of [Brooks's] action concerned the alleged refusal of S[gt]. Black and C.O. Symon to wear a mask while being unvaccinated and working in [Brooks's] unit causing [him] to contract C[OVID]-19," and this led "to alleged unconstitutional actions against [Brooks] . . . when [he] attempted to address his concerns through the prison's grievance system." (Opinion (Op.) at 1.) The trial court again stated it cannot "substitute its judgment relating to C[OVID]-19 safety protocols and decision-making related thereto[.]" (*Id.* at 2.) Further, the trial court stated "[t]here is no possible way for [Brooks] to know and prove exactly how he contracted C[OVID]-19." (*Id.*) The trial court concluded that many other factors, such as other prisoners or any other personnel in the prison, could have caused Brooks to contract COVID-19. (*Id.* at 2-3.) Therefore, the trial court dismissed the Complaint as frivolous under Rule 240(j)(1).

## III. DISCUSSION

On appeal,[3] Brooks asserts five issues for our review, which can be restructured into three issues.[4] First, Brooks argues the trial court erred and abused

---

[3] "Appellate review of a decision dismissing an action pursuant to Pa.R.C[iv].P. [] 240(j)(1) is limited to determining whether an appellant's constitutional rights have been violated and whether the trial court abused its discretion or committed an error of law." *Jones v. Doe*, 126 A.3d 406, 408 n.3 (Pa. Cmwlth. 2015).

[4] Brooks attaches copies of his relevant grievances to his Brief. However, we may not consider attachments to pleadings that are not in the record. *Henderson v. Unemployment Comp.* **(Footnote continued on next page…)**

6

its discretion in dismissing the Complaint as frivolous because Brooks asserted prison officials were not following DOC's COVID-19 safety protocols, he was not challenging the COVID-19 safety protocols, and he asserted prison officials acted deliberately indifferent to his safety needs, which caused him to become infected with COVID-19 and violated his Eighth Amendment rights. (Brooks's Brief (Br.) at 13-14, 19-20.) Further, Brooks asserts the destruction of security footage after he requested that it be maintained amounted to spoliation. (*Id*. at 14-16.) Lastly, having a grievance be denied due to "racially insensitive" language in violation of DOC's policies violates the First Amendment. (*Id*. at 17-18.)[5]

Rule 240(j)(1) of the Pennsylvania Rules of Civil Procedure provides, in relevant part,

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed *in forma pauperis*, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.
>
> > *Note*: A frivolous action or proceeding has been defined as one that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319 . . . (1989).

Pa.R.Civ.P. 240(j)(1). A complaint is frivolous under Rule 240(j)(1) when, "on its face, it does not set forth a valid cause of action." *Bennett v. Beard*, 919 A.2d 365, 367 (Pa. Cmwlth. 2007) (citing *McGriff v. Vidovich*, 699 A.2d 797, 799 (Pa. Cmwlth. 1997)). However, a complaint will not be dismissed under Rule 240(j)(1)

---

*Bd. of Rev.*, 77 A.3d 699, 713 n.6 (Pa. Cmwlth. 2013). To the extent Brooks cites these grievances in his Brief to support his arguments, we may not consider them.

[5] DOC Appellees elected not to participate in this appeal because the trial court dismissed this matter as frivolous prior to service. (February 28, 2023 Notice of Non-Participation.)

simply because it is unartfully pled. *Williams v. Syed*, 782 A.2d 1090, 1095 n.6 (Pa. Cmwlth. 2001). We must consider "all factual allegations in an inmate's complaint to be true when determining whether the legal claims therein are frivolous for purposes of [Rule] 240(j)(1)." *Nunez v. Blough*, 283 A.3d 413, 422 (Pa. Cmwlth. 2022).

The trial court first concluded that it may not substitute its own judgment over DOC's COVID-19 safety protocols. (Op. at 2.) To the extent the trial court characterized Brooks's 1925(b) Statement as only challenging DOC's COVID-19 safety protocols, Brooks maintains that he was not challenging any DOC protocol. Rather, he asserts that prison officials acted deliberately indifferent to his safety by not adhering to DOC's COVID-19 safety protocols. We agree if Brooks was only challenging DOC's protocols, this claim by itself would not be actionable as "allegations that [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations . . . usually do not create rights in prison inmates." *Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017). However, Brooks asserted that prison officials violated the Eighth Amendment by not adhering to DOC's COVID-19 safety protocols.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. This Court has recognized Eighth Amendment violations where there is a "deliberate indifference to serious medical needs of prisoners[, which] constitutes the 'unnecessary and wanton infliction of pain[.]'" *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1038 (Pa. Cmwlth. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)); *see also Pew v. Wetzel* (Pa. Cmwlth., No. 328 M.D. 2022, filed

8

July 21, 2023), slip op. at 4.[6] Whether an inmate's medical need is sufficiently serious to "constitute an injury amounting to cruel and unusual punishment is an objective inquiry." *Tindell*, 87 A.3d at 1038. The alleged medical need does not necessarily need to be current, "but may result from a condition of confinement that is sure to or very likely to pose an unreasonable risk of serious damage to future health." *Id*. at 1039. When the claim is based on harm to future health, an inmate must show they have been "exposed to an unreasonable risk of serious damage to future health and that it would violate contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*. An Eighth Amendment claim also has a subjective inquiry. Thus, in addition to satisfying the objective inquiry, the inmate must show: "[(1)] the prison official knew of and disregarded an excessive risk to inmate health or safety; [(2)] the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and [(3)] the prison official drew the inference." *Id*. "Incidence of disease or infection in densely populated residence situations such as prisons, standing alone, does not necessarily constitute unconstitutional confinement conditions." *Pew*, slip op. at 6. Where a prison official knew of a substantial risk to inmate health and safety and responded "reasonably" to that risk, they may be free from liability, even if the harm was ultimately not averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

In *Tindell*, this Court considered whether the petitioners therein stated a viable Eighth Amendment claim to survive preliminary objections (POs) filed by the respondents. The petitioners argued, *inter alia*, that prison officials were not adhering to DOC's policies and violated the Eighth Amendment. Specifically, the

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

9

petitioners asserted that prison officials "show[ed] a deliberate indifference to [the] [p]etitioners' serious medical needs" regarding certain categories of conditions of their confinement, including: "(a) ventilation; (b) sleep deprivation; (c) mental health; (d) behavior modification; (e) food service; and (f) clothing." *Tindell*, 87 A.3d at 1036. The Court sustained the respondents' demurrer and dismissed the petitioners' mandamus petition. In doing so, the Court analyzed "whether [the p]etitioners [] pled facts that, if proven, would satisfy the elements necessary to state a cognizable claim for violation of the ban on cruel and unusual punishment due to denial of medical care, thus establishing the clear legal right necessary to state a claim for mandamus[,]" and concluded that the petitioners "fail[ed] to allege acts taken or omitted by the named [r]espondents that have caused the constitutional deprivation they seek to remedy" and "fail[ed] to identify harm suffered by, or individual to, [the p]etitioners." *Id*. at 1040. For example, the petitioners claimed "isolation and reduced environmental stimulation has been shown to lead to mental illness," which may have satisfied the objective inquiry of an Eighth Amendment claim. *Id*. However, "[w]hile a serious medical need can be demonstrated by alleging an unreasonable risk of serious damage to future health," the petitioners also needed to satisfy the subjective inquiry by presenting facts that showed "a prison official acted with deliberate indifference to the unreasonable risk of serious damage to future health[,]" which they did not do. *Id*.

In another factually similar case, *Pew*, the Court concluded that the petitioner therein did not allege facts that could satisfy the Eighth Amendment's subjective inquiry, namely, that prison officials disregarded a risk to inmate health and safety and, thus, the petition could not survive the respondent's PO in the nature of a demurrer. *Id*. at 6-7. The Court first noted that it assumed the petitioner could meet

10

the objective inquiry of an Eighth Amendment claim because COVID-19 is contagious and can cause serious damage to health in those who are immunocompromised. *Id*. at 6-7 n.10 (citing *Dixon v. United States* (D.N.J., No. 20-5994, filed June 16, 2020), 2020 WL 3249231, at *3). In addition, the respondents did "not dispute that COVID-19 presents a serious health risk." *Id*. The Court then discussed the subjective inquiry and observed that the petition "contain[ed] multiple references to [the r]espondents' efforts to employ preventative measures including increased sanitation efforts, increased screening and testing of inmates and staff members, and isolation of individuals displaying signs of COVID-19 infection." *Id*. at 7. Importantly, the petition did "not allege that [the r]espondents ignored appreciated risks of harm presented by COVID-19[,]" or that the respondents "responded unreasonably to the unprecedented situation or subjectively disregarded an excessive risk to inmate health[.]" *Id*. Accordingly, the Court sustained the respondents' PO.

Here, Brooks asserted that his Eighth Amendment rights were violated when he contracted COVID-19 because certain prison officials did not adhere to DOC's COVID-19 safety protocols. (Compl. ¶¶ 9, 17.) An Eighth Amendment claim contains an objective inquiry and a subjective inquiry, both of which must be established to state a viable claim. *Tindell*, 87 A.3d at 1040. Regarding the objective inquiry, that Brooks's health was put at an unreasonable risk of serious damage, Brooks alleges that he is "an elder with preexisting medical conditions[,]" and he was exposed to COVID-19 because Sgt. Black and C.O. Symon did not wear masks and tested positive for COVID-19 while stationed in Brooks's unit, and Sgt. Black coughed while handing out trays and handling paperwork. (Compl. ¶¶ 9, 17.) COVID-19 is very contagious and can cause serious health problems, especially in

11

those with preexisting conditions, presenting an unreasonable risk of serious danger when exposed. *See Dixon*, 2020 WL 3249231, at *3 ("The [objective] element of an Eighth Amendment conditions of confinement claim [wa]s met [] because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people."); *Mincy v. Wetzel* (M.D. Pa., No. 1:20-CV-717, filed Nov. 3, 2021), 2021 WL 5112277, at * 3 ("It is undisputed that [the petitioner] ple[d] an objectively serious risk to inmate health or safety, as COVID-19 clearly presents such a risk."); *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("[T]he objective prong is easily satisfied" as "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.").[7] Sgt. Black and C.O. Symon did not wear masks to prevent the spread of the highly contagious virus, Sgt. Black coughed while handling paperwork and passing food trays in Brooks's unit, and Sgt. Black and C.O. Symon tested positive for COVID-19 while working in Brooks's unit, putting Brooks's health at an unreasonable risk of serious danger. On these facts, it is not clear on the face of the Complaint that Brooks has not set forth a valid cause of action as to the objective inquiry of an Eighth Amendment claim, *Bennett*, 919 A.2d at 367, or that the Complaint "lacks an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325.

Regarding the subjective inquiry of Brooks's Eighth Amendment claim, that prison officials acted with deliberate indifference to the unreasonable risk of serious damage to Brooks's future health, Brooks alleges Sgt. Black, who is unvaccinated, did not wear his mask, and even after Sgt. Black tested positive for COVID-19, C.O.

___

[7] "Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value." *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth. 2016). "Unreported federal court decisions may also have persuasive value." *Nagle v. TrueBlue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016).

Symon, who is also unvaccinated, did not wear his mask. (Compl. ¶¶ 9, 17.) Brooks alleges that in denying his grievances, Mirarchi, McGinley, and Moore stated prison officials are expected to follow DOC's COVID-19 safety protocols, including proper masking "as a necessary measure to mitigate this virus," and McGinley assured Brooks that he would enforce those safety protocols. (*Id*. ¶¶ 12, 18, 21.) Brooks also alleges that he was placed in a dirty, hard cell with no privacy before it was known that he contracted COVID-19 in retaliation[8] for filing grievances, and "this is not the way a person who ha[s] contracted COVID-19 is suppose[d] to be treated when prison and medical staff [are] concerned about his health." (*Id*. ¶ 17.) Other inmates who contracted COVID-19 were placed in a "special unit." (*Id*.) Unlike in *Tindell* and *Pew*, where the petitioners therein did not allege facts indicating prison officials acted with a deliberate disregard to health risks, or that prison officials acted unreasonably, Brooks alleges that Sgt. Black and C.O. Symon continuously ignored COVID-19 safety protocols that required masking to mitigate the spread of the highly contagious virus, and, in retaliation for filing grievances that complained of this behavior, prison officials placed Brooks in a dirty, hard cell when other prisoners who were infected with COVID-19 were placed in a special unit. (*Id*. ¶¶ 9, 12, 17, 18, 21.) Taking these facts as true, which we must do at this stage, it is not clear on the face of the Complaint that Brooks has not asserted a valid cause of action regarding his claim that prison officials violated the Eighth Amendment by not adhering to DOC's COVID-19 safety protocols or for retaliating against him,

---

[8] To establish a valid prison retaliation claim, an inmate must assert: "(1) they engaged in constitutionally protected conduct; (2) prison officials took adverse action; (3) the protected conduct was a substantial or motivating factor for the action; and (4) the retaliatory action did not advance legitimate penological goals." *Nunez*, 283 A.3d at 422 (internal quotation marks, brackets, and citation omitted). The inmate has the burden of proof at all times, but the court must consider all factual allegations as true when determining whether a claim for retaliation is frivolous under Rule 240(j). *Id*.

13

*Bennett*, 919 A.2d at 367, or that the Complaint "lacks an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325. Therefore, the trial court erred in dismissing the Complaint as frivolous.

In conclusion, the trial court erred in dismissing the Complaint as frivolous under Rule 240(j)(1) because it is not clear from the face of the Complaint that Brooks has not pled a viable claim, *Bennett*, 919 A.2d at 367, or that the Complaint "lacks an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325. Therefore, we vacate the trial court's Order and remand this matter for further proceedings and to reinstate the Complaint.

 

 

_____

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Wayne Brooks, : 
                Appellant : 
         : 
        v. :   No. 928 C.D. 2022
         : 
Patricia Kelly, Supt. Thomas : 
McGinley, Sgt. Black, C.O. Symon, : 
V. Mirarchi, Lynette Rich and : 
Keri Moore : 

# **O R D E R**

**NOW**, April 19, 2024, the Order of the Court of Common Pleas of Northumberland County, in the above-captioned matter, is **VACATED**, and this matter is **REMANDED** for further proceedings, consistent with the foregoing Memorandum Opinion.

Jurisdiction relinquished.

 

 

_____
**RENÉE COHN JUBELIRER,** President Judge