Jeffrey **BERMAN**, Plaintiff,

v.

**J.D. LAMER, et al., Defendants.**

**Civ.A. No. 95–54.**

United States District Court, E.D. Pennsylvania.

Jan. 31, 1995.

Stephen A. Whinston, Berger & Montague, P.C., Philadelphia, PA, for plaintiff.

Nadine M. Overton, U.S. Attorney's Office, Philadelphia, PA, for defendants.

## ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 27th day of January, 1995, upon consideration of plaintiff's Application For A Temporary Restraining Order and Defendants' Response To Plaintiff's Request For A Temporary Restraining Order And Motion To Dismiss The Complaint and after a hearing, it is hereby **ORDERED** that plaintiff's Application is **DENIED.**

*Background*

Plaintiff is thirty-five years old and is currently incarcerated at the Federal Medical Center at Fort Worth, Texas.[1] Plaintiff has been incarcerated since May of 1990 in various federal prison facilities in Texas, Florida and Pennsylvania. Plaintiff is eligible for release in May 1977. At age eight, plaintiff underwent extensive surgery on his digestive system. His colon, rectum, appendix, large intestine and a portion of his small intestine were removed. Plaintiff's remaining small intestine was then pulled through a hole in his lower abdominal wall, allowing him to eliminate waste in a bag or pouch. This arrangement is known as an ileostomy and the opening is called a stoma. Coletta Dec. at 1–2; Berman Dec. at 1.[2]

In September of 1993, plaintiff was transferred to the Lewisburg Federal Prison Camp. Berman Dec. at 2; Govt.Ex.E. Prior to his transfer to Lewisburg, plaintiff cared for his ileostomy by using: eight to ten ileostomy bags per day; ileostomy belts to keep the bags in place; stoma caps to maintain the stoma when the bags were not attached; a variety of salves and ointments; dilators which were periodically inserted into the ileostomy to ensure its operation;[3] and a controlled diet. Since being transferred to Lewisburg, plaintiff has been examined by no less than seven doctors that specialize in gastroenterology. Berman Dec. at 3–7; Govt.Exs. A, B, D, E. Their consensus is that plaintiff has chronic stenosis, a narrowing of the stoma, and will require surgery in the near future. Pl.Exs. C at 2, E at 3, F; Govt. Ex C.

On January 5, 1995, plaintiff filed the instant action claiming that defendants' conduct violated plaintiff's constitutional rights of freedom from cruel and unusual punishment and due process. Plaintiff's Complaint alleges that the federal prison authorities charged with providing his medical care have exercised deliberate indifference to his serious medical needs since his transfer to Lewisburg in September 1993. Plaintiff's Complaint specifically alleges that defendants have failed to provide him with: (1) an adequate supply of ileostomy bags; (2) sufficiently frequent professional care; and (3) a consistent course of treatment, and as a result his need for surgery has increased.

On January 20, 1995, plaintiff filed the instant Application For A Temporary Restraining Order. Plaintiff claims that on January 19, 1995, one of his treating physicians in Fort Worth, Dr. Wilson, advised plaintiff that he would be transferred to a

---

**1.** Plaintiff was transferred from the Federal Prison Camp in Lewisburg, Pennsylvania to the Federal Medical Facility in Fort Worth, Texas on November 3, 1994. Prior to being held in Lewisburg, plaintiff was held in federal facilities in Seagoville, TX, Eglin, FL and the Fort Worth facility where he is currently housed. Berman Dec. at 2.

**2.** Plaintiff, Jeffrey Berman, filed two declarations. The first, filed with the instant application, is cited as "Berman Dec." The second, delivered to the court by counsel at the hearing on January 27, 1995, is cited as "Berman Dec (1/19/95)."

**3.** This procedure is referred to as a dilatation. Pl.Ex.A.

federal facility in Minnesota for surgery to rectify his stenosis. *See* Govt.Ex.C. Plaintiff objects to this transfer as "a continuation of the cat-and-mouse game" of denying plaintiff the immediate attention his condition warrants.[4] Plaintiff specifically seeks to enjoin the defendants from: (1) transferring him from the Federal Medical Center, Fort Worth, to any other institution of confinement; and (2) failing to permit him to proceed on an escorted trip to the office of a physician in the Dallas–Fort Worth area selected by plaintiff for the purpose of an independent medical examination. Plaintiff is *not entitled to the emergent relief he seeks.*

*Present Treatment*

Since arriving at the Fort Worth facility, plaintiff has received frequent medical attention. Govt.Ex.D; Berman Dec at 7–9. Plaintiff's condition is currently being evaluated by Bureau of Prison medical personnel and outside consultants. Haas Dec. at 2. Specifically, on January 19, 1995, surgical revision of plaintiff's ileostomy was recommended by Dr. Wilson, a consultant general surgeon. *Id.;* Berman Dec. (1/19/95). Dr. Wilson informed plaintiff that he would recommend transfer to a federal facility in Minnesota that has a relationship with the Mayo Clinic for the required surgery. *Id.* Plaintiff was examined by Dr. Trinkle on January 26, 1995. *Id.* Dr. Trinkle is the Fort Worth facility's consultant gastroenterologist. *Id.* According to R.D. Haas, the Associate Warden (medical) at the Fort Worth facility, "[w]hen Dr. Trinkle's recommendation is received, our Clinical Director, John A. Barry, will formulate a comprehensive treatment plan, based upon the medical record, his professional expertise, and the recommendations of [Drs. Wilson and Trinkle]." *Id.* According to Associate Warden Haas, once Dr. Trinkle's recommendation is received and Clinical Director Barry formulates a treatment plan:

> In the event Mr. Berman requires treatment which cannot be provided at this facility, Health Services staff will prepare

a BP–204 Medical/Surgical and Psychiatric Referral Request, which will be routed through the Warden, to the Medical designator in the Bureau of Prisons' Central Office in Washington, D.C., for redesignation. The Medical Designator will make his determination based upon the availability of suitable bedspace and the patient's treatment requirements.

Haas Dec. at 2. Thus, the transfer plaintiff objects to is not imminent as plaintiff's medical needs are currently under evaluation by Bureau of Prisons authorities.

Additionally, the Bureau of Prisons has an administrative procedure by which prisoners may be examined by a private physician. Bureau of Prisons, Health Services Manual, Program Statement # 6000.04, Chapter 5, Section 24. Upon application by an inmate, the Warden may permit a private physician to examine that inmate if the physician was treating the inmate for a major medical condition prior to incarceration or when the Warden and the Medical Director determine such a visit is reasonable and would not violate the best interests of any of the parties. *Id.* Through counsel, plaintiff is currently pursuing permission from the Bureau of Prisons for such an examination.

*Analysis*

 Plaintiff's request for this court to intervene in Bureau of Prisons administration by blocking an unscheduled transfer that plaintiff speculates will occur and ordering an examination by a private physician in Fort Worth is premature. Plaintiff has failed to exhaust the administrative remedy of petitioning the Warden pursuant to Bureau of Prisons, Health Services Manual, Program Statement # 6000.04, Chapter 5, Section 24, for an examination by a private physician. There is no evidence that pursuing this remedy would be futile. Accordingly, plaintiff must first seek relief from the Bureau of Prisons before turning to this court. *See Veteto v. Miller,* 794 F.2d 98, 100 (3d Cir.

---

4. In plaintiff's words:

> I am concerned that the prison officials here a waiting for my situation to deteriorate to the point where I need emergency surgery. I am also concerned that any surgery will result in the removal of additional portions of what is left of my small intestine which will have a serious impact on my functioning for the rest of my life.

> Berman Dec. at 8.

1986) (an inmate who requests more than money damages must exhaust his administrative remedies). In addition, even if plaintiff had exhausted his administrative remedies, injunctive relief is not presently warranted. A petitioner seeking injunctive relief must demonstrate both a likelihood of success on the merits and a probability of irreparable harm. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir.1990). Additionally, the effect of the issuance of the injunctive relief on other interested persons and the public interest must be considered. *Id.* Furthermore, a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future; the moving party must make a clear showing of immediate irreparable harm. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989).

■ Here, plaintiff has demonstrated neither immediate irreparable harm nor a likelihood of success on the merits. Plaintiff has recently been examined by two specialists in the field of gastroenterology. Bureau of Prisons officials charged with providing plaintiff's medical care are in possession of current diagnosis of plaintiff's condition and are determining a course of treatment. *Supra* at 105. Prison staff are monitoring plaintiff's condition on a frequent basis. Govt.Exs.A, D; Berman Dec. Thus, there is no showing of immediate irreparable harm from either neglect by prison authorities or an imminent intrusive procedure to which plaintiff objects.[5]

■ Plaintiff's underlying claims are based on the theory that defendants have acted with "deliberate indifference" to his serious medical needs during his incarceration at Lewisburg and Fort Worth. Pl.Mem. at 10; *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Monmouth County Correctional Institute Inmates v. Lanzaro*, 834 F.2d 326 (3rd Cir.1987). The record before the court documents continued attention to plaintiff's medical needs during his incarceration at the Lewisburg and Fort Worth facilities. Govt.Exs. D, E; Pl. Exs. A, B, C, E, F, G. Given that over the past seventeen months plaintiff has been examined by no less than seven doctors and has received regular medical attention from prison staff, there is little likelihood that plaintiff will prevail on his constitutional claims.

■ Finally, the public interest weighs in favor of denying plaintiff's request for injunctive relief. Bureau of Prisons medical officials are better positioned to determine the medical needs of the plaintiff than this court. They have the expertise, resources and records necessary to make medical decisions in light of an inmate's condition, Bureau of Prisons resources and valid penological objectives. Absent a showing that such officials have engaged in constitutionally impermissible conduct, it not in the public's interest for the court to usurp the Bureau of Prisons' authority and micro-manage the medical needs of a particular inmate.[6]

---

5. The court notes that plaintiff has the right to be informed of proposed treatment and viable alternatives and may refuse a course of treatment under certain conditions. *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir.1990) (the scope of the right to refuse treatment is circumscribed by the states' interest in carrying out valid medical or penological objectives).

6. Likewise, plaintiff has not shown irreparable harm or likelihood of success on the merits with respect to his due process claims of access to the courts, right to counsel and right to private medical treatment. *Veteto*, 794 F.2d at 100 (inmate must exhaust administrative remedies); *Ali v. Gibson*, 631 F.2d 1126 (3rd Cir.1980) (a prisoner's due process rights are not implicated simply because he is transferred a considerable distance from his place of original incarceration); *Harris v. Jacobs*, 621 F.2d 341, 344 (9th Cir.1980) (prisoner's access to private medical care claim is novel). The declarations plaintiff has filed through counsel demonstrate that plaintiff and counsel can effectively communicate.