IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Jones,                          :
                    Appellant           :
                                        :
            v.                          :    No. 923 C.D. 2024
                                        :    Submitted: June 3, 2025
Kristy Varner, Nurse Mia, and Rita      :
Camacho, M.D.                           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: July 14, 2025

        Brandon Jones appeals from an Order of the Court of Common Pleas of Centre
County (trial court), which sustained Preliminary Objections (POs) filed by Kristy
Varner, Nurse Mia, and Rita Camacho, M.D. (collectively, Appellees),[1] to Jones's
Third Amended Complaint, as well as denied Jones's Motion to Stay with Pre-
Amended Complaint Discovery (Motion).  On appeal, Jones argues the trial court
abused its discretion in denying the Motion, both to the extent it sought a stay and
to the extent it sought discovery, and that the trial court erred or abused its discretion
in sustaining the POs as uncontroverted.  Upon review, we affirm.

---

[1] Jones identified Varner as "head medical nurse at PrimeCare," Nurse Mia as a "nurse at
PrimeCare," and Dr. Camacho as "Medical Director for PrimeCare."  (Third Amended Complaint
¶¶ 2-4.)

## I.    BACKGROUND

On January 26, 2023, Jones initiated this matter through a writ of summons.[2] (Reproduced Record (R.R.) at 8-28.)[3]  Three complaints and multiple preliminary objections as to each complaint were filed before Jones filed the operative Third Amended Complaint in February 2024.  Therein, Jones asserted violations of the Eighth and Fourteenth Amendment of the United States Constitution, U.S. CONST. Amend. VIII, XIV,[4] against Appellees for failure to provide him with appropriate medical care.[5]  (R.R. at 63.)

Specifically, Jones averred as follows.  Jones got in a fight with a cellmate in February 2021 after learning they both had COVID-19, during which time Jones struck his right hand on a bunk bed.  (*Id.* at 60a.)  Jones told a guard his hand was broken and was taken to Nurse Mia, who told Jones it looked broken.  (*Id.* at 61.)  A

---

[2] Jones initially named numerous other parties as defendants, all of which have been dismissed as parties at some point during the litigation.

[3] Although Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, requires the reproduced record to be numbered in Arabic figures followed by a small "a," the Reproduced Record here only utilizes Arabic figures.

[4] The Eighth Amendment provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.  It is made applicable to the states by the Fourteenth Amendment, which provides, in pertinent part:  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

The Third Amended Complaint also lists the Fourth Amendment, which is the prohibition against unreasonable searches and seizures, U.S. CONST. amend. IV, which would not be applicable to Jones's claim.

[5] In addition to his constitutional claims, in the earlier complaints, Jones also had asserted a claim for professional/simple negligence, as well as a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  According to an October 2023 stipulation, the negligence claim against Appellees was to be dismissed.  (R.R. at 39.)  However, in December 2023, Appellees sought and obtained entry of partial judgment of *non pros* on that count.  (*Id.* at 43-47.)  In his response to the POs to the Second Amended Complaint, Jones withdrew his *Monell* claim and sought leave to amend the complaint again, which was granted.  (Original Record Items 43, 45.)

lieutenant wanted to take Jones to the hospital but Nurse Mia refused citing Jones's COVID-19 diagnosis. (*Id.*) Nurse Mia ordered an x-ray, Jones was placed in another cell with ice and an Ace bandage-type wrap, and Nurse Mia later informed Jones his hand was fractured. (*Id.*) Jones received no further medical attention for a week, at which point he was told by a guard a doctor appointment had been scheduled. (*Id.*) Jones was seen in March 2021, at which point an orthopedic surgeon told Jones "he was not a candidate for surgery as his break was under 70 degrees" and "had [Jones's] hand been cast immediately, his hand would have healed normally." (*Id.*) Jones was advised because his hand started to heal already, "nothing more could be done." (*Id.* at 62.) A second orthopedic surgeon recommended rehabilitation since the bone started to heal. (*Id.*) Jones averred Varner and Dr. Camacho "knew or should have known that Jones did not receive proper medical care," and "Varner was the one who responded to [Jones's] grievances regarding lack of medical care." (*Id.*) According to Jones, Varner's "responses lacked any solution to [Jones's] medical needs." (*Id.*) Jones averred he "has intense pressure and trouble gripping things" and suffers from physical and psychological stress. (*Id.*)

Thereafter, Appellees filed POs in the nature of a demurrer to the Third Amended Complaint and a supporting brief. In the POs, Appellees asserted that the Third Amended Complaint was devoid of any factual averments as to personal involvement by Varner except for responding to the grievances, and none related to Dr. Camacho. (*Id.* at 69-70.) Appellees also asserted the "Third Amended Complaint contains no facts of constitutionally-deficient policies and procedures for the provision of medical care at the Centre County Correctional Facility." (*Id.* at 70.) Appellees further asserted there were no averments as to deliberate indifference to a serious medical condition. (*Id.*)

3

On March 15, 2024, the trial court issued an order directing briefing on the POs by Jones. (*Id.* at 95.) The order stated if a brief was not filed, "the matter shall be considered by the Court as if uncontroverted." (*Id.*) The order further advised the trial court would dispose of the POs on the parties' briefs, though it would entertain oral argument if a party requested it. (*Id.*)

Jones did not file a brief. Instead, on the day his brief was due, Jones filed his Motion. Therein, Jones asserted pre-complaint discovery was needed to support Appellees' personal involvement in his care. (*Id.* at 96.) Specifically, Jones asserted he needed his file from Appellees and the Centre County Correctional Facility in addition to the depositions of Appellees. (*Id.* at 96-97.)

In the Order dated April 15, 2024, and exited April 16, 2024, the trial court sustained the POs, noting Jones "never filed a brief as per the [trial c]ourt's March 15, 2024 [o]rder and, as such, [Appellees' POs] shall be considered uncontroverted." (Trial Court's 4/15/24 Order at 1.) The trial court further stated:

> [T]here have been multiple amended complaints and [POs] in this matter. [Jones] has not raised any motions for pre-complaint discovery prior to [Jones's] Motion . . . filed the day [Jones's] response to the [POs] was due. In [the M]otion, Jones failed to address any of the [POs] raised by [Appellees] and once more sought an extension of time in which to remedy [Jones's] deficient pleadings.

(*Id.* at 1-2.) Accordingly the trial court denied the Motion and dismissed the Third Amended Complaint with prejudice.[6] (*Id.* at 2.) Jones filed a timely notice of appeal from the Order.[7]

---

[6] Jones sought reconsideration of the Order, which was denied. (R.R. at 122.)

[7] The appeal was originally taken to the Superior Court, which transferred the appeal to this Court on the basis we have exclusive jurisdiction over appeals from final orders of common pleas courts in civil actions against a Commonwealth entity. We note that the Commonwealth **(Footnote continued on next page…)**

4

## II.    PARTIES' ARGUMENTS[8]

Jones argues the trial court abused its discretion by not granting the stay and permitting Jones to engage in pre-complaint discovery pursuant to Rule 4003.8 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 4003.8.  Jones asserts the discovery was necessary to obtain information as to who specifically directed the care Jones received, which was an issue raised in the POs.  In addition, Jones claims he should have been granted additional time as he set forth good cause for the request in his Motion, which was his first extension of time request.  He further claims Appellees would not have been prejudiced by granting Jones additional time, whereas Jones was prejudiced because his Third Amended Complaint was dismissed.

Second, Jones argues the trial court erred or abused its discretion in sustaining the POs as uncontroverted.  In support of this argument, Jones cites to cases disfavoring sustaining POs solely on the basis they were unopposed.  Rather, Jones maintains the trial court should have reviewed the Third Amended Complaint to consider the sufficiency of the claims set forth therein.  Jones asserts the Third Amended Complaint sufficiently stated a cause of action for deliberate indifference to Jones's serious medical needs.  Jones also claims the Third Amended Complaint sufficiently averred facts to support the personal involvement of Nurse Mia, and facts from which Varner's and Dr. Camacho's involvement could be inferred.

For all the above reasons, Jones asks the Court to reverse the trial court's Order.

---

entity here, the Department of Corrections, had been removed from the action by stipulation and subsequent order of the trial court in October 2023.  (R.R. at 29-36.)

[8] Because the request for stay was inextricably tied to the request for pre-complaint discovery, we have combined Jones's first and third issues and will address them together.

Appellees respond that the trial court did not abuse its discretion in denying Jones either the stay or the opportunity to engage in pre-amended complaint discovery. Appellees argue that Jones initiated this action by filing a writ of summons and never sought discovery before filing his initial complaint or any of the three amended complaints. Instead, Appellees argue Jones waited until the day his response to the latest set of POs was filed to seek discovery. According to Appellees, "Jones'[s] dilatory behavior in seeking discovery, especially after filing **four** [c]omplaints without the apparent need for discovery is textbook for causing unreasonable annoyance, burden, and expense," which the rule regarding pre-complaint discovery aims to avoid. (Appellees' Brief at 6 (emphasis in original).) Appellees claim "Jones was doing nothing more than attempting to delay the ultimate decision on the P[Os]," which prejudiced Appellees by hindering their ability to have the meritless claims against them promptly resolved. (*Id.*)

Appellees also argue the trial court did not err or abuse its discretion in sustaining the POs and dismissing the Third Amended Complaint. They note the trial court warned Jones that failure to file a brief would result in the POs being considered uncontroverted. Notwithstanding, Appellees contend that it is apparent, based on the plain wording of the Order, that the trial court did consider the averments of the Third Amended Complaint. Those averments, according to Appellees, do not state a claim for violation of his constitutional rights based on failure to provide medical care. Appellees assert the averments show Appellees were not deliberately indifferent to Jones's medical needs. They claim "Jones'[s] desire to go to the hospital was nothing more than a difference of opinion as to Nurse [Mia]'s treatment decisions," and there are no factual averments as to the other Appellees' involvement in Jones's care. (*Id.* at 13-14.) Appellees assert Jones did

not need medical records to show personal involvement with his care, as he would know who treated him. Moreover, Appellees assert responding to grievances, as Appellee Varner did, is not the personal involvement required to state a claim.

Appellees ask the Court to affirm the trial court's Order.

## III.  ANALYSIS
### A.  *Whether the trial court abused its discretion in denying the Motion seeking a stay and pre-complaint discovery*

Rule 4003.8 of the Pennsylvania Rules of Civil Procedure sets forth the standard for pre-complaint discovery. It provides:

> (a) A plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party.
>
> (b) Upon a motion for protective order or other objection to a plaintiff's pre-complaint discovery, the court may require the plaintiff to state with particularity how the discovery will materially advance the preparation of the complaint. In deciding the motion or other objection, the court shall weigh the importance of the discovery request against the burdens imposed on any person or party from whom the discovery is sought.

Pa.R.Civ.P. 4003.8.

Further, pre-complaint discovery requests, similar to other discovery requests, are generally within the discretion of the trial court. *Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Cmwlth. 2015). Therefore, we reverse only if there was an abuse of discretion. *Id.* Likewise, the denial of a stay is reviewed for an abuse of discretion. *In re Penn-Delco Sch. Dist.*, 903 A.2d 600, 607 (Pa. Cmwlth. 2006). "An abuse of discretion occurs where[,] in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or

7

the result of partiality, prejudice, bias, or ill will." *Tullytown Borough*, 129 A.3d at 622 (internal quotation marks omitted). "An abuse of discretion is not merely an error of judgment." *In re Ten Thousand Six Hundred Eighty Dollars*, 728 A.2d 403, 406 (Pa. Cmwlth. 1999).

Here, the trial court denied Jones's Motion seeking a stay to engage in discovery to aid him in filing another amended complaint. In doing so, the trial court reasoned:

> [T]here have been multiple amended complaints and preliminary objections in this matter. [Jones] has not raised any motions for pre-complaint discovery prior to [Jones's] Motion . . . filed the day [Jones's] response to the [POs] was due. In [Jones's M]otion, [Jones] failed to address any of the [POs] raised by [Appellees] and once more sought an extension of time in which to remedy [Jones's] deficient pleadings

(Trial Court's 4/15/24 Order at 1-2.)

We discern no abuse of discretion in the trial court denying the Motion on this basis. Jones filed his writ of summons in January 2023, and filed his initial Complaint in June 2023. He filed the First Amended Complaint in August 2023, the Second Amended Complaint in October 2023, and the Third Amended Complaint in February 2024. At no point prior to the filing of any of these complaints did Jones assert he needed discovery to obtain information that was "material and necessary to the filing of the complaint." Pa.R.Civ.P. 4003.8(a). The first time Jones made such a claim was in his Motion filed the same day his brief in response to the POs to the Third Amended Complaint was due and approximately 16 months after he commenced this action.

In the Motion, Jones asserted that he needed pre-complaint discovery because Appellees filed POs challenging the sufficiency of Jones's allegations of personal involvement. (Motion ¶¶ 5-6.) However, the issue of the sufficiency of the

8

allegations of personal involvement was not something new to the Third Amended Complaint. Based on a review of the record, the bases of Appellees' POs to the Second Amended Complaint were the same as those asserted in Appellees' POs to the Third Amended Complaint. (*Compare* POs to Second Amended Complaint ¶¶ 12-18, Original Record (O.R.) Item 36, *with* POs to Third Amended Complaint ¶¶ 12-18, R.R. at 69-70.) Upon further review, the averments in the Second and Third Amended Complaints are also virtually identical as to the constitutional claims, except Jones added an averment that Varner responded to the grievances in the Third Amended Complaint. (*Compare generally* Second Amended Complaint, O.R. Item 27, *with* Third Amended Complaint, R.R. at 60-63.) Thus, Jones was on notice from at least December 2023, when the POs to the Second Amended Complaint were filed, of the alleged deficiencies in his pleading, including an assertion that it lacked sufficient averments of personal involvement, and did not seek discovery to remedy the deficiencies until several months later and only after Appellees filed POs on the same bases to a virtually identical amended pleading.

We previously suggested a party's delay in seeking pre-complaint discovery may preclude an abuse of discretion finding when a trial court subsequently denies such a request. In *Hvizdak v. Mastrangelo* (Pa. Cmwlth., No. 1014 C.D. 2022, filed January 10, 2024),[9] the appellant raised, among other issues, a claim that the common pleas court abused its discretion in denying pre-complaint discovery after the appellant already filed a complaint. Although the appellant asserted he needed the discovery to support his claims, we noted the appellant had not sought the pre-complaint discovery until four months after the writ of summons was issued and

---

[9] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

only after the appellees sought a rule for the appellant to file a complaint. *Id.*, slip op. at 9. We stated the appellant's "need to file a 'bare bones' complaint was the result of his own failure to request pre-complaint discovery in a timely manner. In other words, [the appellant]'s legally insufficient complaint was the predictable result of his failure to act until [the a]ppellees forced his hand." *Id.* at 10.

In the seminal case *McNeil v. Jordan*,[10] our Supreme Court reiterated that it is within the trial court's discretion to determine, among other things, the reasonableness and good faith of a party's request seeking pre-complaint discovery. 894 A.2d 1260, 1278 (Pa. 2006). The Supreme Court further stated:

> In practice, of course, a trial court addresses a discovery request not in abstract terms but in the context of the case at bar. In doing so, the court exercises significant discretion, weighing the importance of the request against the burdens imposed on the subject party to determine, as a practical matter, whether the discovery request should be permitted. Because the trial court is the body best situated to assess the legitimacy, necessity, and burden of a given discovery request, we are loath to disturb unduly the ingrained customs and practices of our trial courts of permitting the making of averments on "information and belief,"[] attempting to fashion a just result that best balances the needs of the adversary parties, and making discovery rulings that comport with these basic principles. Thus, nothing in this Opinion should be construed to diminish materially a trial court's time-honored prerogative to evaluate pleadings and discovery requests and to fashion discovery orders in light of what it deems appropriate in a given case. Rather, this Opinion simply aims to guide trial courts in exercising their undisputed discretion to grant or deny pre-complaint discovery requests according to the exigencies of a given case.

*Id.* at 1278-79.

Here, it appears the trial court, which was uniquely situated to understand the litigation between the parties, exercised its discretion and denied Jones's Motion to

---

[10] *McNeil* was the genesis of Rule 4003.8. *See* Pa.R.Civ.P. 4003.8 Explanatory Comment (2007).

stay this matter for an indefinite amount of time while Jones engaged in discovery to cure a deficiency of which he had been aware for months. Given the high standard under which we review denials of stays and discovery-related motions, we cannot say the trial court abused its discretion under these circumstances.

**B.** **Whether the trial court erred or abused its discretion in sustaining the POs and dismissing the Third Amended Complaint**

We must also address whether the trial court committed legal error or abused its discretion when it sustained Appellees' POs and dismissed the Third Amended Complaint. In those POs, Appellees asserted a demurrer, which "tests the legal sufficiency of [a] complaint." *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 908-09 (Pa. 2019) (internal quotation marks omitted). When ruling on preliminary objections, the Court must accept all well-pleaded factual allegations as true, along with any inferences reasonably deduced therefrom. *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). The "question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005).

As a preliminary matter, we address Jones's argument that the trial court erred in considering the POs as uncontroverted. We have previously stated that the fact POs are uncontested or unopposed cannot serve as the sole basis for sustaining them. *Joloza v. Dep't of Transp.*, 958 A.2d 1152, 1155 (Pa. Cmwlth. 2008). Instead a court

11

must consider the sufficiency of the complaint. *Id.* Here, the trial court stated in its Order that because Jones did not file a brief as ordered, Appellees' POs were being "considered uncontroverted" and then sustained those POs. (Trial Court's 4/15/24 Order at 1.) Appellees argue it is apparent from a review of the Order that the trial court did not solely rely on the POs being uncontroverted and the trial court did consider the Third Amended Complaint. This conclusion is not as apparent to this Court. The trial court makes no mention of the claims asserted in the Third Amended Complaint and certainly does not address why Appellees' demurrer should be sustained. At best, it calls Jones's Third Amended Complaint "deficient," which suggests that it may have reviewed it before issuing its ruling. (*Id.* at 2.)

Notwithstanding, even if the trial court had sustained the POs solely on the basis that they were uncontroverted, we can affirm a trial court's order on other grounds, *Thorpe v. Dep't of Transp., Bureau of Driver Licensing*, 214 A.3d 335, 339 n.8 (Pa. Cmwlth. 2019), and would do so here.

We previously articulated the standard to be applied to constitutional claims of a deliberate indifference to an inmate's serious medical needs in *Tindell v. Department of Corrections*, 87 A.3d 1029 (Pa. Cmwlth. 2014). There, we explained:

> The United States Supreme Court held in *Estelle v. Gamble,* 429 U.S. 97 . . . (1976), that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104 . . . (internal citations omitted). The Court clarified that **claims of negligent diagnosis or treatment, disagreement as to the course of treatment, and medical malpractice do not rise to the level of a constitutional violation** merely because the patient is a prisoner. *Id.* at 106 . . . . Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

12

Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry. *Id.* at 106-[]07. . . ; *Farmer v. Brennan,* 511 U.S. 825, 834 . . . (1994). Common factors relied upon by the courts to determine if a medical need is sufficiently serious to fall within the ambit of the Eighth Amendment include whether the medical need is: (i) one that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that causes chronic and substantial pain. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998); *Monmouth C[nty.] Corr[.] Inst[.] Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987).

* * *

In addition to satisfying the objective component of an Eighth Amendment claim, a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated. In *Farmer* . . ., the Supreme Court concluded that the inquiry into whether a prison official was deliberately indifferent is a subjective one, **requiring the demonstration of a state of mind akin to criminal recklessness**, and held that a prisoner must establish that: (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference.[] 511 U.S. at 837, 840 . . . . The Court also emphasized that the duty of a prison official under the Eighth Amendment is to ensure reasonable safety and that **prison officials who respond reasonably to the alleged risk cannot be found liable under the Eighth Amendment, even where the measures taken by prison officials failed to abate the substantial risk**. *Id.* at 844-[]45 . . . . Examples of circumstances where a prison official has been found to act with deliberate indifference include where the prison official: (i) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (ii) delays necessary medical treatment based on a non-medical reason; (iii) prevents a prisoner from receiving needed

or recommended medical treatment; or (iv) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury. *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999); *Monmouth C[nty.]*, 834 F.2d at 346-[]47.

*Tindell*, 87 A.3d at 1038-40 (emphasis added). Finally, we have stated:

The deliberate indifference test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" *Inmates of the Allegheny C[nty.] Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted).

Complaints about medical care which "merely reflect a disagreement with the doctors over the proper means" of treating the prisoner's medical condition do not rise to the level of a constitutional violation. *Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir. 1987). "Absent a showing that [prison] officials have engaged in constitutionally impermissible conduct, it is not in the public's interest for the court to usurp the[ir] authority and micro-manage the medical needs of a particular inmate." *Berman v. Lamer,* 874 F.Supp. 102, 106 (E.D. Pa. 1995).

*Kretchmar v. Dep't of Corr.*, 831 A.2d 793, 799 (Pa. Cmwlth. 2003).

In their POs, Appellees asserted, among other things, that the Third Amended Complaint did not sufficiently plead deliberate indifference to a serious medical condition. Viewing the factual averments of the Third Amended Complaint in favor of Jones, as we must, we agree. Even assuming Jones's broken hand was a serious medical condition under the objective standard, the Third Amended Complaint is devoid of any averments that Appellees were subjectively, deliberately indifferent. Jones did not plead any facts to support that Appellees had a "state of mind akin to criminal recklessness," as required by *Tindell*.[11]

---

[11] At most, Jones pleaded Nurse Mia may have been negligent in not sending him to the hospital, but claims of negligence are insufficient to state a constitutional claim for deliberate **(Footnote continued on next page…)**

Moreover, as we held in *Kretchmar*, where an inmate received medical treatment but disagreed with the course of treatment, there is no deliberate indifference. Here, Jones avers he was taken by a guard following the fight to obtain medical attention, saw Nurse Mia, who ordered an x-ray, which Jones received, Jones was bandaged and given ice, and ultimately saw not one but two orthopedic surgeons. As we held in *Dukes v. Pennsylvania Department of Corrections* (Pa. Cmwlth, No. 281 M.D. 2020, filed February 17, 2021), slip op. at 8, when the pleading itself shows an inmate received medical attention, the allegations "do not rise to the level of an Eighth Amendment violation based on deliberate indifference." *See also Kretchmar*, 831 A.2d at 799-800 ("Even a cursory review of the [p]etition reveals that [the p]etitioner receive[d] extensive medical attention while in prison."). To the extent Jones asserts he should have seen a specialist earlier, we have previously held the failure to send an inmate to a specialist does not give rise to a constitutional violation. *Rivera v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 673 M.D. 2019, filed Aug. 23, 2021), slip op. at 7.

The Third Circuit Court of Appeals affirmed dismissal of an inmate's Eighth Amendment claim under similar circumstances. *Ryle v. Fuh*, 820 Fed. Appx. 121 (3d Cir. 2020).[12] In *Ryle*, the inmate alleged he was not provided appropriate medical

---

indifference. *Tindell*, 87 A.3d at 1038 (citing *Estelle,* 429 U.S. at 106). *See also Stewart v. Pa. Dep't of Corr.*, 677 Fed. Appx. 816, 820 (3d Cir. 2017) (holding delay in treatment due to misdiagnosis, "at worst, amounts to medical malpractice, which is not actionable under the Eighth Amendment"). Furthermore, the courts have determined delaying necessary medical treatment may be evidence of deliberate indifference if it is based on **non-medical** reasons. *Tindell*, 87 A.3d at 1040 (citing *Rouse*, 182 F.3d at 197; *Monmouth Cnty.*, 834 F.2d at 346-47). Here, Jones averred the reason Nurse Mia refused to send him to the hospital was based on Jones having COVID-19. (R.R. at 61.)

[12] *Ryle* was decided on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Fed.R.Civ.P. 12(b)(6), which is procedurally similar to a demurrer and which also requires all well-pleaded factual averments to be accepted as true. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

care for a hand injury. The complaint alleged the inmate saw a nurse at the infirmary who splinted the hand and gave the inmate pain medicine before instructing him to fill out a sick-call slip for follow-up treatment. Upon return to the infirmary four days later, the same nurse told the inmate she did not think the hand was broken but ordered an x-ray, which was not taken for several more days. Only after the x-ray was the inmate taken to the emergency room where an orthopedic doctor told him that nonsurgical resetting of the bone was not possible due to the delay in treatment.[13] *Id.* at 122.

The district court granted the defendants' motion to dismiss. On appeal, the Third Circuit found the inmate did not allege deliberate indifference, explaining that the inmate's own allegations showed the nurse attempted to provide him medical care, by providing pain medicine, splinting the hand, and scheduling an x-ray. *Id.* at 123. The Third Circuit held that "[e]ven if this type of treatment was negligent (an issue [it] d[id] not decide), medical negligence without accompanying deliberate indifference does not rise to the level of a constitutional violation." *Id.*

Because Jones has not pleaded facts that subjectively show Appellees had the requisite state of mind, his claim must fail for lack of deliberate indifference. Thus, the trial court did not err in sustaining Appellees' POs and dismissing the Third Amended Complaint.[14]

---

[13] The inmate made additional assertions about his treatment by other medical staff after his surgery, which are not pertinent here.

[14] Jones's Third Amended Complaint also did not allege sufficient personal involvement against either Varner or Dr. Camacho. It was completely silent as to Dr. Camacho's role in Jones's care, and the only averment as to Varner was that Varner reviewed Jones's grievance. However, reviewing a grievance after the fact does not establish sufficient personal involvement to impose liability. *Martin v. Giroux* (Pa. Cmwlth., No. 1934 C.D. 2016, filed May 26, 2017), slip op. at 8.

16

## IV. CONCLUSION

We discern no abuse of discretion by the trial court in denying Jones's Motion seeking a stay to engage in pre-complaint discovery. Nor do we discern any legal error or abuse of discretion in the trial court sustaining Appellees' POs and dismissing Jones's Third Amended Complaint. Accordingly, we affirm.

                                 _____

RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Jones,                          :
                         Appellant      :
                                   :
            v.                    :   No. 923 C.D. 2024
                                   :
Kristy Varner, Nurse Mia, and Rita     :
Camacho, M.D.                          :

# **O R D E R**

**NOW**, July 14, 2025, the Order of the Court of Common Pleas of Centre County, entered in the above-captioned matter, is **AFFIRMED**.

                                   _____

                                   RENÉE COHN JUBELIRER, President Judge